13-2699-cv
Mishkin v. Lopalo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued:  April 29, 2014          Decided: August 26, 2014)

Docket No. 13-2699-cv

_____

MARION S. MISHKIN LAW OFFICE, Plaintiffs' Liaison Counsel: 21 MC 100 Bodily Injury, Non-Respiratory, Non-Injestion Cases,

*Appellant*,

v.

CHRISTOPHER R. LOPALO, STANLEY KALATHARA, SCOTT EPSTEIN, MICHAEL SCOTT LEVINE, NEIL C. MASCOLO, JR., JEFFREY A. NEMEROV, JEFFREY SINGER, ANDREW J. SMILEY, FRANK A. ANDREA, III, CHRISTOPHER DOWNE, EVAN SACKS, ANDREW RICHARD DIAMOND, MICHAEL SETH LEYDEN, MICHAEL F.X. RYAN, JOEL MYRON LUTWIN, JOHN S. PARK, JOSEPH L. DECOLATOR, LEONARD LINDEN, STEVEN L. BARKAN, JOSEPH EHRLICH, DAVID JAROSLAWICZ, DAVID LAURENCE KREMEN, MICHAEL KREMINS, NOAH H. KUSHLEFSKY,

*Appellees*.[1]

_____

_____

[1] The Clerk of the Court is directed to correct the caption as above.

Before: WALKER, POOLER, and WESLEY, *Circuit Judges*.

Appeal from the June 11, 2013 order of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) denying appellant, the Marion S. Mishkin Law Office, an award of attorneys' fees for services performed as plaintiffs' liaison counsel in the bodily injury, non-respiratory cases arising out of the events of September 11, 2001. Because we find the district court abused its discretion in denying Mishkin any fee for her work without further inquiry, we vacate and remand.

_____

E. CHRISTOPHER MURRAY, Ruskin Moscou Faltischiek, P.C., Uniondale, NY, *for Appellant Marion S. Mishkin Law Office*.

JOSHUA BARDAVID, New York, NY, *for Appellees Frank A. Andrea, III, Michael Scott Levine, Joel Myron Lutwin, Neil C. Mascolo, Jr., John S. Park, Jeffrey Singer and Andrew J. Smiley* .

DAVID L. KREMEN, Oshman & Mirisola, LLP, New York, NY for *Appellee Oshman & Mirisola, LLP (incorrectly sued as David Laurence Kremen)*.

POOLER, *Circuit Judge*:

The Marion S. Mishkin Law Office ("Mishkin") appeals from the June 11, 2013 order of the United States District Court for the Southern District of New York (Alvin R. Hellerstein, *J.*) denying an award of attorneys' fees for services performed as plaintiffs' liaison counsel in the bodily injury, non-respiratory cases arising out of the events of September 11, 2001. The district court, while acknowledging Mishkin should receive a fee for her work as liaison counsel, denied her any fee after finding her fee application inflated and unsubstantiated by contemporaneously kept time records. We find the district court abused its discretion in denying Mishkin a fee without further inquiry, and thus we vacate and remand for further proceedings.

## BACKGROUND

The underlying cases in this appeal involve state law claims for non-respiratory injuries suffered while working at the World Trade Center site after the September 11 attacks. Mishkin alleges that at some point prior to 2005 the New York State Supreme Court appointed her as liaison counsel for all plaintiffs in cases where plaintiffs claimed a physical injury while working at the World Trade Center site. However, there is no state court order in the record reflecting

3

such an appointment. In 2005, the underlying cases were removed from state court to the United States District Court for the Southern District of New York. Initially, the cases were included in the class of roughly 10,000 respiratory-related illnesses pending before that court. When the cases were transferred, Mishkin and defendants' liaison counsel wrote to the district court, introducing themselves and proposing a briefing schedule for a remand motion. The district court denied the remand motion on December 4, 2006. In 2006, the district court asked Mishkin to provide a report regarding the non-respiratory plaintiffs, and referred to her as "liaison counsel" in acknowledging that report's receipt.

The district court did not enter an order actually appointing Mishkin liaison counsel in federal court until May 21, 2008. Her term was short, as the district court, unhappy with Mishkin's performance, removed her as liaison counsel in an order dated August 28, 2008. On September 12, 2008, the attorneys for the non-respiratory plaintiffs sent a joint letter to the district court urging Mishkin be reinstated as liaison counsel. The letter stated that:

> The sum and substance of Marion's contribution to the interests of all concerned in this litigation cannot be overstated. Through these past five years, Marion generated hundreds of group-wide status, strategy and summary reports, coordinated group-wide meetings

4

and appeared for our group in all of the court conferences in State and Federal Court, all to keep our group informed of the numerous procedural and substantive intricacies of this litigation. She has regularly furnished us with all of the pertinent court orders and corresponded with us on a continuous basis to promote the group's understanding of the issues and facilitate the group's compliance with the Court's procedures, instructions and deadlines. Marion authored and orally argued nearly all the briefs for our group and engaged in many productive discussions for us with the defense attorneys throughout these years.

App'x at 50.

The district court relented and reappointed Mishkin on April 3, 2009, with the caveat that she must work with a newly appointed co-liaison counsel. The appointment order tasked liaison counsel, in part, with coordinating responses to queries from the district court and defendants, facilitating plaintiffs' compliance with district court orders, maintaining an official service list, "consider[ing] proposals for future case management orders or other case management procedures and issues," and performing other administrative tasks as necessary. App'x at 28-29.

On January 23, 2012, Mishkin submitted an application for $1,868,445 in fees for her work as liaison counsel. The district court denied that application

5

without prejudice to renew. At its hearing on the issue, the district court found Mishkin's application sought fees for work that exceeded her role as liaison counsel. The district court found Mishkin "is entitled to a fee as liaison counsel. But it has to be in relationship to the work that she should be doing as liaison counsel." App'x at 940. The district court also ruled that Mishkin could only claim fees for work done while she was appointed by the district court, excluding her time in state court and any time in federal court when she was not acting by an order of appointment.

On April 26, 2013, Mishkin submitted a revised fee application seeking $418,995 in fees for work done after May 21, 2008 and excluding the period of time the district court had removed her as liaison counsel. Several plaintiffs' counsel—responsible for funding liaison counsel's fees out of the fees they received— filed objections to Mishkin's fee request. The district court held a hearing on the revised fee application on June 10, 2013. As it opened the discussion regarding Mishkin's fee application, the district court noted that Mishkin sought to be paid for 931.1 hours of work, including 179.7 hours spent preparing her fee application. The district court described the hours spent preparing the fee application "extraordinary" and "outrageous," noting that the

time comprised "11 to 12 percent of the total time [Mishkin] spent on the case." App'x at 1384.

During the colloquy, Mishkin's lawyer told the district court the objectors sought

> . . . to utterly deprive Ms. Mishkin of the fee she is entitled to for doing work that, as I have just expressed to your Honor . . .

THE COURT: To be clear, Mr. Kublanovsky, she is entitled to a fee.

MR. KUBLANOVSKY: She is entitled to her fee, your Honor.

THE COURT: To a fee.

MR. KUBLANOVSKY: To a fee.

App'x at 1389.

The district court described several services for which Mishkin sought payment that the district court thought exceeded the scope of work set forth in its appointment order. For example, the district court noted Mishkin sought to be reimbursed for reviewing various motions for summary judgment, which the district court described as "well beyond any activity of liaison counsel. It's makework, that's what it is." App'x at 1397-98.

The district court offered to send the matter to a magistrate judge for further consideration, but Mishkin declined. Instead, she asked the court "to award her a reasonable fee in your Honor's estimation." App'x at 1406. The district court then denied Mishkin's application in full, awarding her no fee. The district court found that Mishkin's time records

> are not contemporaneous time records. They are
> reconstructed records. Ms. Mishkin may have had
> notations at the time she was performing this work of
> the fractions of hours that she performed for each
> category of service. We will not know for sure unless
> and until there might be discovery of her records. But
> the impression I have is these are all reconstructions,
> and that's why it took her so long to prepare the time
> records. They show a complete misunderstanding of
> what her work was as liaison counsel.

App'x at 1409-10. Based on its factual findings that Mishkin's time records were not kept contemporaneously, and that her application sought fees for work beyond the scope of its appointment order, the district court awarded her no fee. A final order was entered June 11, 2013. This appeal followed.

**DISCUSSION**

We review the district court's denial of an application for attorney's fees for abuse of discretion. *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 151 (2d Cir.

8

2013). "We review questions of law regarding the appropriate legal standard in granting or denying attorney's fees de novo." *Id.*

Mishkin argues that she need not produce contemporaneous time records to get paid because the underlying cases arise under state law rather than federal law. Under New York state law, Mishkin argues, counsel need not track time contemporaneously for a court to award fees. Our Court has recognized that in cases in which the right to attorneys' fees is governed by state law, New York's more liberal rule allowing reconstructed records should apply. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees, a right which cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit." (internal citations omitted)); *see also Schwartz v. Chan*, 142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001) ("[U]nder New York law, courts may award attorney's fees based on contemporaneous or reconstructed time records.").

However, state law did not create the substantive right to attorney's fees— federal law did. We hold that when a district court appoints liaison counsel, that appointment flows from the district court's inherent authority to manage its own docket and is thus governed by federal, not state, law. *See In re Zyprexa Prods.*

9

*Liab. Litig.*, 594 F.3d 113, 130 (2d Cir. 2010) (MDLs benefit from "a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic."); *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) (Court's inherent powers allow it to consolidate cases and appoint general counsel to "supervise and coordinate the conduct of plaintiffs' cases."); *see also In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) (A district court has inherent authority "to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants.").

As Mishkin's appointment was made possible by the district court's inherent powers, and not by operation of state law, it follows that the authority to pay her derives from federal law. Absent the appointment order entered by the district court there is no authority to pay Mishkin. We thus reject her argument that she is entitled to fees for work she performed as liaison counsel prior to her appointment by the district court. Similarly, there are no grounds for collecting a fee to pay liaison counsel from plaintiffs' attorneys who settled their cases prior to her appointment.

10

The rules that govern the payment of appointed counsel in a case arising under federal law are well established in this Circuit. In *New York State Ass'n for Retarded Children, Inc. v. Carey*, our Court crafted a new rule: "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." 711 F.2d 1136, 1148 (2d Cir. 1983). The "[f]ailure to do so results in denial of the motion for fees." *Riordan*, 977 F.2d at 53. Thus,

> All applications for attorney's fees, whether submitted
> by profit-making or non-profit lawyers, for any work
> done after the date of this opinion should normally be
> disallowed unless accompanied by contemporaneous
> time records indicating, for each attorney, the date, the
> hours expended, and the nature of the work done.

*Carey*, 711 F.2d at 1154 (numbering omitted). "*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("*Scott I*").

Our Court has, however, allowed attorneys who failed to keep contemporaneous time records "to recover limited fees for any contemporaneously documented time that [the attorney] was physically before

11

the district court." *Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011) ("*Scott II*"). Thus, "entries in official court records (e.g. the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours in court at hearings and at trial and in conferences with the judge or other court personnel." *Id.* While district courts are "under no obligation to award fees based on such time," we have held that "such a regime prevents a totally inequitable result . . . while, at the same time, preserving the strong incentive *Carey* creates for lawyers to keep and submit contemporaneous records." *Id.*

We turn, then, to Mishkin's fee application, mindful that when reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application," *Carey*, 711 F.2d at 1146, and that "[a] request for attorneys' fees should not turn into a second major litigation." *Buckhannon Bd. & Care Home, Inc. v. W. Va.*, 532 U.S. 598, 609 (2001) (alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, (1983)).

The district court's finding that Mishkin failed to keep contemporaneous time records is clearly erroneous. In response to questioning by the district court, counsel reported that while Mishkin did not track her time on a computer,

12

Mishkin did not reconstruct her time for her fee application. Rather, "[e]verything was time-stamped when she did it. She just had to go back and review. There was no recording made of it such as we would have to print out from a computer program, for example, a time record or an entry-keeping program. But she did have everything time-stamped." App'x at 1394-95.

In denying Mishkin a fee, the district court stated:

> The Second Circuit has insisted on contemporaneous time records for anyone seeking to be reimbursed for fees. These are not contemporaneous time records. They are reconstructed records. Ms. Mishkin may have had notations at the time she was performing this work of the fractions of hours that she performed for each category of service. We will not know for sure unless and until there might be discovery of her records. But the impression I have is that these are all reconstructions, and that's why it took her so long to prepare the time records.

App'x at 1409-10.

So long as an attorney "made contemporaneous entries as the work was completed, and that [her] billing was based on these contemporaneous records," *Carey* is satisfied. *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994); *see also David v. Sullivan*, 777 F.Supp. 212, 223 (E.D.N.Y. 1991) ( "Attorney affidavits which set forth all charges with the required

13

specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees."); *Lenihan v. City of New York,* 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (typewritten transcription of original records satisfy *Carey).*

Here, it is not clear from the record whether or not Mishkin kept contemporaneous time records. Mishkin's attorney told the district court that she tracked her time contemporaneously, and that "she did have everything time-stamped." App'x at 1395. The district court acknowledged that Mishkin "may have had notations at the time of performing her work of the fractions of hours that she performed for each category of service," but went on to state it "w[ould] not know for sure unless and until there might be discovery of her record." App'x at 1409-10. On this evidence, the district court could not make a determination that Mishkin did, or did not, keep contemporaneous records of "the date, the hours expended, and the nature of the work," *Carey*, 711 F.2d at 1148. It was clear error to deny Mishkin any fee on the basis of her failure to keep contemporaneous time records without further inquiry into her timekeeping practices. Accordingly, we remand to the district court to determine whether Mishkin kept sufficiently detailed contemporaneous records as to be eligible for a fee award under *Carey*.

14

Even if on remand the court finds that Mishkin did keep contemporaneous records, we note that a computer timekeeping system would have simplified the entire process. Having chosen to keep time in an inefficient manner, Mishkin cannot recoup the costs flowing from her burdensome method of timekeeping. When an attorney chooses to submit reconstructions of contemporaneously kept time records, denying fees for time spent preparing the application is "an appropriate and necessary penalty for omitting to include the time records." *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986).

We can appreciate the district court's frustration in being asked to contend with a second unwieldy fee application, one that failed to comply with its earlier directive to not seek fees for services that exceeded the scope of the appointment order, especially after Mishkin pushed for a ruling rather than send the matter to a magistrate judge. However, the district court itself stated several times that Mishkin was due a fee – just not the fee she sought. Equity does not permit the district court to pay her nothing simply because she insisted she was due more.

We stress that even if, on remand, the district court determines Mishkin kept contemporaneous time records, it is under no obligation to pay Mishkin what she sought. The district court may undertake a more detailed review of

15

Mishkin's fee application on remand, or it may send the matter to a magistrate judge for a report and recommendation. In any event, the district court is not obligated to undertake a line-by-line review of Mishkin's extensive fee application. It may, instead, "exercise its discretion and use a percentage deduction as a practical means of trimming fat." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks omitted). Using this form of "rough justice," district courts in our Circuit regularly employ percentage reductions as an efficient means of reducing excessive fee applications. *See, e.g., Romeo and Juliette Laser Hair Removal Inc. v. Assara I LLC.*, No. 08 Civ. 442 (TPG) (FM), 2013 WL 3322249, at *5-8 (S.D.N.Y. July 2, 2013) (reducing fees of principal biller, an associate, by seventy-five percent because her time charges were "grossly excessive relative to the nature of the work performed"); *Days Inn Worldwide. Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100 (KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing attorneys' fees by seventy-five percent because "a substantial amount of work performed . . . was redundant and unnecessarily duplicative"); *Lide v. Abbott House*, No. 05 Civ. 3790 (SAS), 2008 WL 495304, at *l–2 (S.D.N.Y. Feb. 25, 2008) (reducing attorney fee award by thirty percent for various reasons,

including "excessive and unnecessary hours spent on indisputably straightforward tasks"). The district court may chose whatever option it deems best in reconsidering this matter on remand.

Finally, we note the district court, assigned to oversee the flood of litigation that followed the events of September 11, has done an admirable job of managing the legions of attorneys involved with the cases while keeping a careful eye on costs. However, a bit more detail in the order appointing liaison counsel may have helped here. The Manual for Complex Litigation suggests that when appointing liaison counsel, the appointing court should

> determine the method of compensation, specify the
> records to be kept, and establish the arrangements for
> their compensation, including setting up a fund to
> which designated parties should contribute in specified
> proportions. Guidelines should cover staffing, hourly
> rates, and estimated charges for services and expenses.

Manual for Complex Litigation (Fourth) § 14.215 (2014). Going forward, district courts would do well to heed these recommendations.

## CONCLUSION

For the reasons given above, we vacate the order of the district court and remand for the district court (1) to determine whether Mishkin kept sufficiently

detailed contemporaneous records as to be eligible for a fee award pursuant to *Carey*; and (2) if Mishkin kept such records, for further proceedings consistent with this opinion to determine an appropriate fee for her work.