24-2764 (L)
*Ekstein v. Polito*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of January, two thousand twenty-six.

Present:
        BARRINGTON D. PARKER,
        REENA RAGGI,
        MICHAEL H. PARK,
            *Circuit Judges.*

---

DAVID EKSTEIN, SARA EKSTEIN, GAVRIEL ALEXANDER,

        *Plaintiffs-Appellees-Cross-Appellants*,

9 POLITO LLC,

        *Counter-Defendant-Appellee-Cross-Appellant*,

        v.                        24-2764 (L), 24-2767 (XAP)

POLITO ASSOCIATES, LLC,

        *Defendant-Appellant-Cross-Appellee.*\*

---

    \* The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR PLAINTIFFS-APPELLEES-CROSS-
APPELLANTS:

ANDREW PINCUS, Seidman & Pincus, LLC,
Mineola, NY.

FOR COUNTER-DEFENDANT-APPELLEE-
CROSS-APPELLANT:

ANDREW PINCUS, Seidman & Pincus, LLC,
Mineola, NY.

FOR DEFENDANT-APPELLANT-CROSS-
APPELLEE:

RICHARD D. WILKINSON (Douglas K.
Wolfson, William N. Aumenta, Meir Kalish,
*on the brief*), The Weingarten Law Firm,
LLC, Piscataway, NJ.

Appeal from a judgment of the United States District Court for the Southern District of New York (McCarthy, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that 9 Polito LLC's cross-appeal is **DISMISSED**, the district court's December 8, 2023 summary judgment order is **AFFIRMED**, and the district court's September 20, 2024 judgment is **AFFIRMED in part and REVERSED in part**.   We **REMAND** for proceedings consistent with this order.

This case arises out of a loan agreement among (i) Counter-Defendant-Appellee 9 Polito LLC ("9 Polito"), which borrowed $42.65 million to finance its purchase of an office building in New Jersey; (ii) Customers Bank, the predecessor-in-interest to Defendant-Appellant Polito Associates, LLC ("Polito Associates"), which lent 9 Polito the $42.65 million, and (iii) Plaintiffs-Appellees David Ekstein, Sara Ekstein, and Gavriel Alexander (the "Guarantors"), who guaranteed 9 Polito's loan.[1]   9 Polito defaulted on the loan in 2020, and litigation ensued.   After a bench trial, the district court entered judgment in favor of Polito Associates, concluding that 9 Polito and the Guarantors were liable for roughly $1.5 million.   On appeal, Polito Associates argues that the district court erred in calculating 9 Polito's and the Guarantors' liability and that the district court should have awarded it attorney's fees.   On cross-appeal, the Guarantors argue that the district

---

[1]  9 Polito was called Copper Ridge LLC at the time it entered the loan agreement.

court erred in concluding in its December 8, 2023 summary judgment order that they are liable for the outstanding principal and interest on 9 Polito's loan. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. The Guarantors' Liability

Customers Bank's loan to 9 Polito was secured by a first-priority mortgage on the office building in New Jersey that 9 Polito had purchased (the "Property"). The "Mortgage Note" ("Note") said that 9 Polito would have "no personal liability" for its obligation to repay Customers Bank, and Customers Bank would "look solely to the [Property] . . . for repayment of the Loan." Joint App'x at 525. But that limitation on 9 Polito's liability would become "NULL AND VOID" if "all or any part of the [Property], or any direct or indirect interests in" 9 Polito were "sold, transferred, assigned or encumbered" without Customers Bank's prior written consent. *Id.* at 526. The Guarantors in turn executed a "Non-Recourse Carveout Guaranty" ("Guaranty") that guaranteed "[a]ll amounts for which [9 Polito] is liable" under 9 Polito's agreement with Customers Bank. *Id.* at 575.

The district court concluded in its summary judgment order that 9 Polito and the Guarantors are jointly liable for the unpaid principal and interest on 9 Polito's loan because two owners of 9 Polito had previously transferred their interests in 9 Polito without Customers Bank's consent. On cross-appeal, the Guarantors argue that those transfers were "factually inconsequential and legally immaterial" because they were transfers of "minority equity interests" in 9 Polito that had no impact on 9 Polito, the Property, or the Guarantors. Appellees' Br. at 30.[2] The Guarantors argue that we should not construe the Note to render them liable based on these transfers.

---

[2] 9 Polito also filed a notice of cross-appeal of the district court's summary judgment order, but it moved to dismiss that cross-appeal voluntarily and it does not argue the issue on cross-appeal. We grant 9 Polito's motion.

3

"We review the district court's summary dispositions *de novo*." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 222 (2d Cir. 2023). The parties agree that New Jersey law governs our interpretation of the loan documents, including the Note. Under New Jersey law, courts enforce contracts "according to [their] terms, giving those terms their plain and ordinary meaning." *GMAC Mortg., LLC v. Willoughby*, 165 A.3d 787, 794 (N.J. 2017) (internal quotation marks omitted). Courts "cannot rewrite a contract for the parties better than or different from the one they wrote for themselves." *Id.* (internal quotation marks omitted). The Note's terms encompass the transfers of minority interests in 9 Polito because the Note expressly prohibited transfers of "*any* direct or indirect interests" in 9 Polito. Joint App'x at 526 (emphasis added). So enforcing the Note and Guaranty "according to [their] terms" renders the Guarantors liable for 9 Polito's unpaid principal and interest on the loan. *GMAC*, 165 A.3d at 794.

Still, the Guarantors contend the "anti-alienation provisions . . . simply cannot be read to hold the Guarantors personally liable" because the owners of 9 Polito who transferred their interests held "just 8.2%" of 9 Polito and did not manage it, the transfers had no impact on the Guarantors or the Property, and the transfers caused no prejudice and were reversed. Appellees' Reply Br. at 4. But the Note's clause restricting transfers would be significantly curtailed if all transfers with these characteristics were permitted. Six entities owned small percentages of 9 Polito and thus exerted little control over it; transfers of any of those ownership interests would not affect the Guarantors or the Property, and thus would not cause Customers Bank any prejudice. Adopting the Guarantors' argument would mean that any of those ownership interests could be transferred, even though the Note expressly prohibited transfers of "*any* direct or indirect interests"

4

in 9 Polito.   Joint App'x at 526 (emphasis added).   New Jersey law does not countenance such a departure from a contract's written terms.   *See GMAC*, 165 A.3d at 794.[3]

## II.   Post-Judgment Interest

The district court calculated 9 Polito's unpaid principal and interest on the loan by relying on the final judgment in a foreclosure action that Customers Bank, and Polito Associates as its successor-in-interest, litigated against 9 Polito in New Jersey state court.   That final judgment stated that Polito Associates was entitled to "$35,937,291.39, together with continuing interest" at the rate in the loan documents until the date of the final judgment, and "LAWFUL INTEREST THEREAFTER."   Joint App'x at 1288.   The district court determined that "lawful interest" was 1.5% under New Jersey rules, and it calculated Polito Associates' damages based on that rate.

On appeal, Polito Associates argues that the contractual interest rate—not the "lawful" rate—applies after the final judgment in the foreclosure action because the Note says that "interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered."   Joint App'x at 522.   But the Guarantors and 9 Polito argue that the issue of post-judgment interest was litigated and decided in the foreclosure action, so issue preclusion bars Polito Associates from relitigating post-judgment interest in this case.

---

[3] The Guarantors rely on *Fidelity Land Development Corp. v. Rieder & Sons Building & Development Co.*, 377 A.2d 691 (N.J. App. Div. 1977).   The contract there permitted the lender to demand immediate payment of a loan if there was any "change in the ownership of the mortgaged property," but the court did not enforce that clause when the mortgaged property was transferred from the corporate mortgagor to its principal stockholder.   *Id.* at 692.   The court concluded that "the parties to the note never intended that a mere paper transfer of title, without any accompanying jeopardy to plaintiff's security, be the occasion for acceleration of its due date."   *Id.* at 695.   No New Jersey court has cited *Fidelity* since 1983, and its "suggestion" that "due-on-sale" clauses are enforceable only if they impair a security has been regarded as "at most, dictum."   *Fogel v. S.S.R. Realty Assocs.*, 461 A.2d 1190, 1192-93 (N.J. App. Div. 1983).   So we are wary of relying on it as we "predict how [New Jersey's] highest court would resolve" the Guarantors' cross-appeal.   *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (quotation marks omitted).   The Note is also broader than the clause in *Fidelity* because it expressly prohibits transfers of "*any* direct or indirect interests" in 9 Polito, so following *Fidelity* here would amount to a greater departure from the contractual terms than in *Fidelity*.   Joint App'x at 526 (emphasis added).

We agree. "When determining the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008) (modifications accepted and internal quotation marks omitted). Under New Jersey law, a party asserting issue preclusion must show that (i) "the issue to be precluded is identical to the issue decided in the prior proceeding," (ii) "the issue was actually litigated in the prior proceeding," (iii) "the court in the prior proceeding issued a final judgment on the merits," (iv) "the determination of the issue was essential to the prior judgment," and (v) "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Hennessey v. Winslow Twp.*, 875 A.2d 240, 243 (N.J. 2005) (citation omitted).

Polito Associates argues that we should not apply issue preclusion here because the post-judgment interest rate was not "actually litigated" in the foreclosure action. Under New Jersey law, an issue is actually litigated when a party had "a full and fair opportunity to litigate the issue in the previous tribunal," *Matter of Est. of Dawson*, 641 A.2d 1026, 1035 (N.J. 1994) (quotation marks omitted), or it "is submitted for determination, and is determined" by the previous tribunal, *Allesandra v. Gross*, 453 A.2d 904, 909 (N.J. App. Div. 1982) (quoting Restatement (Second) of Judgments § 27, comment d (1982)). Both standards are met here. Polito Associates does not explain why it lacked "a full and fair opportunity to litigate" the post-judgment interest rate in the foreclosure action. *Matter of Est. of Dawson*, 641 A.2d at 1035 (quotation marks omitted). Further, it "submitted" that rate "for determination," *Allesandra*, 453 A.2d at 909 (quotation marks omitted), when it submitted a "statement of amount due" in the foreclosure action requesting "continuing interest" post-judgment at the contractual rate, Joint App'x at 1285. And the issue

6

was "determined," *Allesandra*, 453 A.2d at 909 (quotation marks omitted), when the New Jersey court awarded Polito Associates post-judgment interest at the lawful rate, Joint App'x at 1288.

To be sure, Polito Associates did not forcefully litigate this issue in the foreclosure action. But a litigant who does not present "comprehensive proof" of his claim cannot "take advantage of his own tactic" to avoid issue preclusion on the grounds that a claim was not "actually litigated." *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 661 (N.J. 2012). So Polito Associates cannot take advantage of its failure to present a cogent argument on post-judgment interest in the foreclosure action to avoid issue preclusion here.

While the district court did not err in granting Polito Associates "lawful interest" after the final judgment in the foreclosure action, it erred in identifying the correct "lawful interest" rate. Polito Associates argues, and [9] Polito and the Guarantors do not dispute, that the applicable "lawful interest" rate under New Jersey law in 2021 was 3.5%.[4][5] We remand for the district court to apply this correct "lawful interest" rate.

### III. Attorney's Fees

Polito Associates argues that the district court erred when it declined to award it attorney's fees. "We review the district court's denial of an application for attorney's fees for abuse of discretion." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 147 (2d Cir. 2014). "We review questions of law regarding the appropriate legal standard in granting or denying attorney's fees de novo." *Id.* (citation omitted).

---

[4] *See* N.J. Ct. R. 4:42-11(a)(ii)-(iii); *see also* POST-JUDGMENT AND PRE-JUDGMENT INTEREST RATES, https://www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (setting the post-judgment interest rate for judgments over $20,000 in 2021 at 3.5%).

[5] Polito Associates did not make this argument to the district court, but we may exercise "our discretion to review waived or abandoned arguments where the argument presents a question of law and there is no need for additional fact-finding." *Tarpon*, 79 F.4th at 232 n.25 (internal quotation marks and ellipses omitted).

The district court decided not to award Polito Associates attorney's fees because the record was "completely devoid of [any evidence] indicating the amount of hours or type of work performed" by Polito Associates' attorneys. Joint App'x at 2092-93. The parties disagree as to whether federal law or New Jersey law governs our review of that decision. We do not need to resolve that disagreement because the district court did not err in denying Polito Associates fees under federal or New Jersey law. Under federal law, "any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records." *New York State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Polito Associates never submitted time records despite having been ordered to do so. Likewise, under New Jersey law, "a party seeking enforcement of a contractual provision for reasonable counsel fees must ordinarily establish the elements of his claim by plenary proof" at trial. *Cohen v. Fair Lawn Dairies, Inc.*, 210 A.2d 73, 74 (N.J. 1965). A plaintiff may escape this rule if the trial "dealt mainly with other substantive issues" and counsel submits an "affidavit of services . . . sufficiently complete to enable [the trial court] to reach a fair determination as to the extent of the legal services rendered and the reasonable value to be paid." *Id.* But Polito Associates did not submit any such affidavit.

Polito Associates still argues that it should be permitted to prove its attorney's fees in a "post-trial fee application." Appellant's Reply Br. at 40. But it never asked the district court for permission to submit a post-trial fee application. Instead, it asserted in its post-trial proposed findings of fact and conclusions of law that it "is entitled to collect its post-foreclosure judgment attorneys' fees in full" and that those fees totaled "$176,154." Joint App'x at 2373, 2377. The district court did not err in denying that request.

IV. **Property's Fair Market Value**

After final judgment in the foreclosure action, Polito Associates purchased the Property at a sheriff's sale for around $8 million in credit. The district court calculated 9 Polito's and the Guarantors' liability to Polito Associates by deducting the fair market value of the Property at the time of the sheriff's sale from 9 Polito's unpaid principal and interest on the loan. Both parties presented expert testimony about the Property's fair market value, and the district court adopted Polito Associates' expert's valuation method of valuing the Property "as-is," *i.e.*, its market value in its condition at the appraisal date. On appeal, Polito Associates argues that the district court erred because it disagreed with Polito Associates' expert that the "as is" valuation method should account for "entrepreneurial profit." Polito Associates contends that this error led the district court to valuate the Property nearly $3 million over its true "as is" value.

"After a bench trial, this Court reviews a district court's factual findings for clear error." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). Relying on Polito Associates' expert testimony, the district court explained that "entrepreneurial profit" "reflects the cost anybody would require to have to go through the process of repairing a property." Joint App'x at 2087 (internal quotation marks, brackets, and ellipses omitted). The district court then found that the record was "devoid of credible evidence" to support the inclusion of entrepreneurial profit in the Property's fair market value. *Id.* It thus concluded that "entrepreneurial profit" should not enter the "as-is" valuation method because that method ignores "speculative, forward-looking value"— including value associated with future repairs. *Id.* That conclusion is consistent with New Jersey law, which considers entrepreneurial profit only when "the developer or owner-operator makes improvements to property." *Westwood Lanes, Inc. v. Borough*, 24 N.J. Tax 239, 249 (2008). We thus discern no clear error in the district court's calculation.

\* \* \*

9

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, Polito's cross-appeal is **DISMISSED**, the December 8, 2023 summary judgment order of the district court is **AFFIRMED**, and the September 20, 2024 judgment of the district court is **AFFIRMED in part and REVERSED in part**. We **REMAND** for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court