John G. Koeltl, United States District Judge
The Court has reviewed Magistrate Judge Freeman's May 24, 2018, Report and Recommendation in this case. No objections have been filed, and the time to file objections has passed. The Court adopts in full Magistrate Judge Freeman's Report and Recommendation. For the reasons stated in Magistrate Judge Freeman's Report and Recommendation, the Clerk is directed to enter judgment in favor of the plaintiff and against the defendant in the amounts of:
1. $616,275.63 in principal due and owing under the Promissory Note;
2. $43,756.59 in unpaid interest accrued as of September 25, 2016;
3. Additional interest on the loan balance of $660,032.22 for the period from September 26, 2016, to the date of entry of the judgment, to be calculated by the Clerk of Court at the rate of $366.68 per day ( i.e. , 20% per annum, based on the actual number of days elapsed over a year of 360 days);
4. $13,132.25 in attorneys' fees; and
5. $576.77 in costs.
The Clerk is also directed to close this case.
SO ORDERED.
REPORT AND RECOMMENDATION
DEBRA FREEMAN, United States Magistrate Judge
TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:
This matter has been referred to this Court for a damages inquest, following the entry of an Order by the Honorable John G. Koeltl, U.S.D.J., finding that plaintiff HTV Industries, Inc. ("HTV") was entitled to a default judgment against defendant Deepak Agarwal ("Agarwal") on HTV's claim for breach of a guaranty. (See Dkts. 15, 16; see also Complaint, dated May 15, 2017 ("Compl.") (Dkt. 6).)[1] For the reasons below, I recommend that HTV be awarded judgment against Agarwal as follows: (1) damages of $616,275.63, representing outstanding principal due and owing under the guaranty; (2) interest owing on the unpaid principal in the amount of $43,756.59 through September 25, 2016 (which, as set forth below, was the "Maturity Date" of the debt); (3) additional prejudgment interest on the total outstanding loan balance of $660,032.22, to be calculated *713 by the Clerk of Court at the rate of $366.68 per day from September 26, 2016 to the date of entry of judgment; (4) $13,132.25 in attorneys' fees; and (5) $576.77 in costs.
BACKGROUND
A. Factual Background [2]
Plaintiff HTV is a Delaware corporation with its principal place of business in Pepper Pike, Ohio. (Proposed Findings ¶ 1; Compl. ¶ 3.) Defendant Agarwal is a natural person residing in New York, New York. (Proposed Findings ¶ 2; Compl. ¶ 4.)
1. The Choxi Promissory Note
On September 25, 2015, the corporate entity Choxi.com, Inc. ("Choxi"), an online retailer with which Agarwal was affiliated, executed a promissory note (the "Promissory Note") in favor of HTV, in exchange for a $1 million loan made by HTV to Choxi. (Proposed Findings ¶ 4; Compl. ¶ 8; Harrington Decl. ¶ 6 & Ex. A (Promissory Note).)[3]
Under the terms of the Promissory Note, Choxi agreed to repay to HTV the principal amount of the loan, plus interest at the rate of 12 percent per annum (to be calculated based on a 360-day year), compounded annually. (Proposed Findings ¶ 5(a); Compl. ¶ 9(a); Harrington Decl., Ex. A, Section 1(a).) More specifically, Choxi agreed to pay HTV at least accrued interest in monthly installments, beginning in or about September 2015,[4] with the entire remaining principal amount, together with any remaining accrued and unpaid interest, to become due and payable on the Promissory Note's maturity date of September 25, 2016 (the "Maturity Date"). (Proposed Findings ¶ 5(a), (b); Compl. ¶ 9(a), (b); Harrington Decl., Ex. A, Section 1(a).)
The parties further agreed that if Choxi failed to make a payment under the Promissory Note when due, then an "Event of Default" would occur, giving HTV the right to accelerate the Promissory Note and to declare all of Choxi's obligations thereunder to be "immediately due and payable." (Proposed Findings ¶ 5(c), (d); Compl. ¶ 9(c), (d); Harrington Decl., Ex. A, Section 2(a), Section 3.) The parties also agreed that "the filing or commencement for [sic] any proceedings for relief under the United States Bankruptcy Code" with respect to Choxi would similarly constitute an Event of Default, permitting acceleration of Choxi's payment obligations. (Harrington Decl., Ex. A, Section 3; see also Proposed Findings ¶ 5(c); Compl. ¶ 9(c).)
*714 Finally, of relevance here, the Promissory Note contains the following provision, allowing for HTV to recover additional amounts-including attorneys' fees and costs, and interest at a modified rate-in the event that Choxi were to fail to make payments when due, necessitating collection efforts by HTV:
Additional Expense. If this Note or any Principal Amount or interest thereon is not paid when due, whether by reason of acceleration or otherwise, and this Note is placed in the hands of any attorney or attorneys for collection, [Choxi] promises to pay, in addition to the other amounts due hereon, the reasonable costs and expenses of such collection, including reasonable attorneys' fees and expenses. In addition, if this Note or any Principal Amount or interest thereon is not paid when due and the Company is in default beyond any applicable notice and cure period, interest shall be due on the Principal Amount, from the Maturity Date, at the rate of twenty percent (20%) per annum ("Default Interest"), calculated on the basis of the actual number of days elapsed over a year of 360 days.
(Harrington Decl., Ex. A, Section 2(c); see Proposed Findings ¶ 5(f), (g); Compl. ¶ 9(f), (g).)
2. The Agarwal Guaranty
This action against Agarwal is based on the fact that, "[a]s an inducement for HTV to lend Choxi the $1,000,000 pursuant to the Promissory Note, and as additional security for the repayment of the amounts due under the Promissory Note, on or about September 25, 2015, Agarwal concurrently executed a written Continuing Unconditional Guaranty of Choxi's repayment obligations under the Promissory Note in favor of HTV (the 'Guaranty')." (Proposed Findings ¶ 6; see also Compl. ¶ 10; Harrington Decl., Ex. B (Guaranty).)
Under the terms of the Guaranty, Agarwal "absolutely and unconditionally guarantee[d], as a primary obligor and not as a surety, the full and punctual payment" of Choxi's "Guaranteed Obligations" under the Promissory Note, including any such Guaranteed Obligations incurred or accrued during the pendency of any bankruptcy proceeding, "whether or not allowed or allowable in such proceeding." (Harrington Decl., Ex. B, Section 2.) The term "Guaranteed Obligations" is defined in the Guaranty to be "used in its most comprehensive sense," and to include, inter alia , principal, interest, collection costs, and attorneys' fees. (Id. ) In addition, the Guaranty contains a separate provision regarding "Costs of Enforcement," under which Agarwal agreed to pay "all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by [HTV] ..., in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, ... [Agarwal]." (Id. , Section 15.)
The Guaranty is governed by New York law. (Id. , Section 18.)
3. Choxi's Default Under the Promissory Note, and Agarwal's Failure To Make Payment Under the Guaranty
Choxi made payments to HTV (representing interest, plus some repayment of principal) under the Promissory Note from October 14, 2015 through February 25, 2016 (see Proposed Findings ¶¶ 9,[5] 27, 28;
*715 Compl. ¶ 13; Harrington Decl., ¶ 11 & Ex. E (spreadsheet showing payments made)[6] ), but then failed to make the interest payment that was due in March 2016, thereby defaulting in its obligations under the Promissory Note (Proposed Findings ¶ 10; Compl. ¶ 14; Harrington Decl. ¶ 12). As the Promissory Note did not set out the precise monthly dates on which installment payments of interest were due, HTV apparently afforded Choxi until the last day of the month of March 2016 to make its interest payment for that month, and therefore deemed March 31, 2016 the "Default Date." (See Harrington Decl. ¶ 12 (stating that a monthly payment of accrued interest was "due on or before March 31, 2016," and identifying that date as the "Default Date").)
On or about September 1, 2016, HTV extended Agarwal's time to make payment under the Guaranty through March 25, 2017. (Proposed Findings ¶ 12; Compl. ¶ 16; see Harrington Decl., Ex. C (Extension of Time).[7] )
On March 27, 2017, given that HTV had still not received the amounts owed under the Promissory Note and Guaranty, counsel for HTV sent Agarwal a demand letter, stating that Choxi was in default under the Promissory Note, and demanding from Agarwal "the immediate payment" of $726,421.43, which counsel represented to be the remaining balance due on the Promissory Note (including both principal and accrued interest) as of March 21, 2017.[8] (Proposed Findings ¶ 13; Compl. ¶ 17; Harrington Decl., Ex. D, at 1 (Demand Letter).) Counsel further demanded payment of additional interest accruing from March 25, 2017 to the date of payment, as well as "attorneys' fees, costs and expenses incurred in connection with this matter pursuant to Paragraph 15 of the Guaranty," which, counsel indicated, totaled $3,500.00 as of that time. (Harrington Decl., Ex. D., at 1.)
Despite its demand letter, HTV has represented to the Court that it received no further payments from Choxi or Agarwal. (Proposed Findings ¶ 11; Compl. ¶ 19; Harrington Decl. ¶¶ 13, 16.) Further, this Court notes that, according to HTV's Complaint, "[a]n involuntary Chapter 7 bankruptcy petition was filed against Choxi on November 10, 2016 and it remain[ed] in bankruptcy as of the filing of this action." (Compl. ¶ 15.)
*716 B. Procedural History
HTV commenced this action on May 15, 2017, by filing a Complaint alleging that Agarwal had breached the Guaranty. (See generally Compl.) HTV has certified that it duly served Agarwal with process (see Affidavit of Service, sworn to May 25, 2017 (Dkt. 8); see also Ziluck Decl. ¶ 8) but, to date, Agarwal has not moved, answered, or otherwise responded to the Complaint (see generally Dkt.).
On July 7, 2017, the Clerk of Court issued a Certificate of Default against Agarwal. (Dkt. 12.) On July 18, 2017, Judge Koeltl then ordered Agarwal to show cause why a default judgment should not be entered against him (Dkt. 13), and HTV filed proof that, on July 20, 2017, it served the Order To Show Cause on Agarwal (Dkt. 14). When Agarwal did not respond, Judge Koeltl proceeded to issue another Order, stating that HTV had "shown that it is entitled to a Default Judgment" against Agarwal, and referring the matter to this Court for a damages inquest. (Dkt. 15.)
On September 5, 2017, this Court issued a Scheduling Order, by which it directed HTV to submit proposed findings of fact and conclusions of law concerning damages. (Dkt. 17.) In that Scheduling Order, this Court directed HTV to explain how it calculated its damages, to tie the proposed damages specifically to the legal claim on which liability had been established, and to support any claimed damages with an affidavit and attached documentary evidence. (Id. ) This Court also cautioned Agarwal that, if he failed to respond to HTV's submissions or to contact the Court to request a hearing by November 6, 2017, then this Court's would issue a report and recommendation on the basis of HTV's written submissions alone. (Id. )
HTV timely filed inquest submissions (Dkts. 18, 19, 20), but the supporting Declaration of Daniel Harrington ("Harrington"), who represented that he was the President of HTV and a custodian of its business records (Harrington Decl. ¶ 1), was neither sworn nor expressly stated to be under penalty of perjury, as required by 28 U.S.C. § 1746 (see generally Harrington Decl.). As Harrington had been put forward by HTV as the party representative with personal knowledge of the amounts due and owing under the Promissory Note (and, hence, the Guaranty) (see Harrington Decl. ¶¶ 17-23), this Court, on May 7, 2018, issued another Order, directing HTV to supplement its submissions with a certification signed by Harrington stating, under penalty of perjury, that the statements contained in his Declaration were true and correct (see Dkt. 22). On May 11, HTV submitted the supplemental certification from Harrington, together with proof of service on Agarwal of both the certification and this Court's May 7 Order. (See Dkts. 23, 24.)
As of the date of this Report and Recommendation, Agarwal has neither responded to HTV's original or supplemental submission nor requested a damages hearing (see generally Dkt.), and this Court will therefore proceed to consider the matter based solely on HTV's submissions.
DISCUSSION
I. APPLICABLE LEGAL STANDARDS
A. Damages Following a Default Judgment
Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of Court must enter a default against a party who "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Entry of default is a "judicial recognition that a defendant has, through its failure to *717 defend the action, admitted liability," City of New York v. Mickalis Pawn Shop, LLC , 645 F.3d 114, 128 (2d Cir. 2011), and establishes "an admission of all well-pleaded allegations against the defaulting party," Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co. , 373 F.3d 241, 246 (2d Cir. 2004).
Although a "default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," Bambu Sales, Inc. v. Ozak Trading, Inc. , 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks and citation omitted), it does not reach the issue of damages, see Ferri v. Berkowitz , 561 Fed.Appx. 64, 65 (2d Cir. 2014) (Summary Order) (citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp. , 109 F.3d 105, 111 (2d Cir. 1997) ). A plaintiff must therefore substantiate its claim with sufficient evidence to prove its damages with reasonable certainty. RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L. , No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), report and recommendation adopted , 2013 WL 4505255 (Aug. 23, 2013). Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc. , No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to prove damages to a reasonable certainty, then the court should decline to award damages, even where liability has been established, see Lenard v. Design Studio , 889 F.Supp.2d 518, 538 (S.D.N.Y. 2012) (adopting report and recommendation).
B. Damages for Breach-of-Contract Claims
On this inquest, HTV seeks contractual damages against Agarwal for breach of the Guaranty. Under New York law, it is a "fundamental principle" that an award of damages for breach of contract "should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." Lucente v. Int'l Bus. Machines Corp. , 310 F.3d 243, 262 (2d Cir. 2002) (citation omitted). Where the contract at issue gives rise to a monetary payment obligation, then the amount owed should be awarded as damages. Arch Ins. Co. v. Precision Stone, Inc. , 584 F.3d 33, 41 (2d Cir. 2009).
Further, New York law provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a) ; see also NML Capital v. Republic of Arg. , 621 F.3d 230, 239 (2d Cir. 2010) (citing Section 5001(a) ). Where "a contract provides for interest to be paid at a specified rate ... the contract rate of interest, rather than the [statutory rate], governs ... until the contract is merged in a judgment." ( Id. (internal quotation marks and citations omitted).)
In a case where the contract at issue provides for an award of attorneys' fees and costs, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as the amounts are not unreasonable." Inter-American Dev. Bank v. Venti S.A. , No. 15cv4063 (PAE), 2016 WL 642381, at *1-2 (S.D.N.Y. Feb. 17, 2016) (citing Diamond D Enters. USA, Inc. v. Steinsvaag , 979 F.2d 14, 19 (2d Cir. 1992) ). Where a court awards attorneys' fees pursuant to a valid contractual provision, "it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion." U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co. , 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks and citation omitted).
*718 II. HTV's DAMAGES
A. Unpaid Principal
HTV seeks to recover $616,275.63 for the unpaid principal due under the Promissory Note. (Compl. ¶ 13.) In support of its claim, and in response to this Court's May 7, 2018 Order, Harrington has now stated, under penalty of perjury, that he has personal knowledge of the amounts paid (and not paid) by Choxi, under the Promissory Note. (See Harrington Decl. ¶¶ 1, 17; see also Harrington Supp. Decl.) Through Harrington, HTV has provided a spreadsheet showing that, with respect to the $1 million loan made by HTV to Choxi on September 25, 2015, Choxi repaid $425,000, in 17 payments of $25,000 each, representing a total of $383,724.37 in principal and $41,275.63 in interest. (Harrington Decl., Ex. E.)
This Court has reviewed HTV's calculations, and finds that, under the terms of the Promissory Note (and based on the methodology set forth supra , at n.6), HTV has correctly determined the amount of Choxi's payments that should have been applied to the unpaid principal and interest, at the time the payments were made. Based on those calculations, Choxi still owed $616,275.63 in principal (i.e. , the loan amount of $1 million, less $383,724.37 in the amount of principal repaid), following its last payment. (Id. ) Accordingly, and given Agarwal's unconditional guarantee of all amounts owed under the Promissory Note, this Court finds that HTV has established with reasonable certainty that, pursuant to the Guaranty, it is entitled to recover $616,275.63 from Agarwal in outstanding principal, due under the Promissory Note.
B. Unpaid Interest
HTV also seeks to recover damages for the unpaid interest that accrued on the outstanding principal from the date of Choxi's last payment. On this point, this Court finds that, while HTV is entitled to recover unpaid interest, its proffered calculations do not entirely comport with the terms of the Promissory Note.
The Promissory Note effectively provides for two different interest calculations-one that should apply to determine accrued and unpaid interest prior to the Maturity Date of the debt, and one that should apply thereafter.
As to the period prior to the Maturity Date, the Promissory Note provides, as set out above, that interest was to accrue at the rate of 12 percent per annum, compounded annually. (See Harrington Decl., Ex. A, at 1.) From the date of Choxi's last payment, on February 25, 2016 to the Maturity Date of September 25, 2016 (a period of 213 days), Choxi therefore owed interest at the rate of 12 percent per annum on the outstanding principal of $616,275.63. Using a daily accrued interest amount of $205.43 (calculated by applying the 12-percent interest rate to $616,275.63, and then dividing that amount by 360, given that the Promissory Note specified that interest was to be calculated based on a 360-day year), this Court finds that the accrued and unpaid interest as of the Maturity Date was $43,756.59 (i.e. , $205.43, multiplied by 213 days). As the 12 percent interest was then to compound annually, the Court further finds that this amount of unpaid interest should then have been capitalized (i.e. , added to the outstanding principal) at the Maturity Date-which was one year after the date the Promissory Note was executed. This yields a new principal amount, or loan balance, of $660,032.22 (i.e. , $616,275.63 plus $43,756.59) as of the Maturity Date.
As to the period subsequent to the Maturity Date, the Promissory Note provides that interest was then to accrue at the rate *719 of 20 percent (id. , at Section 2(c) ), and there is no reference in the Promissory Note to any further compounding of that interest. Accordingly, this Court finds that, commencing September 26, 2016, Choxi was obligated, under the Promissory Note, to pay additional interest on the loan balance of $660,032.22-with such additional interest calculated at the rate of 20 percent per annum, on the basis of the actual number of days elapsed over a 360-day year. This Court further finds that, under the Guaranty, Agarwal is now obligated to pay that additional interest, together with the pre-Maturity-Date accrued and unpaid interest.
The problem with HTV's calculation is that it appears to compound interest monthly, for the period from the date of Choxi's last payment to the Maturity Date (see Harrington Decl., Ex. E), despite the fact that the Promissory Note only states that interest was to be compounded annually for that period. Accordingly, although I recommend that HTV be awarded accrued and unpaid interest, I only recommend that it be awarded the amounts set out above-i.e. , $43,756.59, plus additional interest at the contract rate of 20 percent, calculated from September 26, 2017 to the date of entry of judgment. In making this calculation of additional interest, the Clerk of Court should be directed to apply a daily accrued interest amount of $366.68 (calculated by applying the 20-percent interest rate to $660,032.22, and then dividing that amount by 360).
C. Attorneys' Fees and Costs
HTV also seeks $17,414 in attorneys' fees and $576.77 in costs. (See Ziluck Decl., Exs. F & G.) Under the terms of the Promissory Note, Choxi agreed that, if collection of the debt were required, it would "pay ... the reasonable costs and expenses of such collection, including reasonable attorneys' fees and expenses." (Harrington Decl., Ex. A, Section 2(c).) Further, under the Guaranty, Agarwal explicitly agreed to secure Choxi's "Guaranteed Obligations" under the Promissory Note, including collection costs and attorneys' fees. (Id. , Ex. B, Section 2.) Agarwal also agreed, under the Guaranty, to pay the costs and fees incurred by HTV in seeking to enforce the Guaranty itself. (See id. , Section 15.) HTV therefore has the contractual right to recover from Agarwal the fees and costs it incurred in seeking payment under both the Promissory Note and Guaranty, provided such fees and costs are found by the Court to be reasonable. See Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC , No. 13cv6562 (RJS), 2015 WL 4392081, at *7 (S.D.N.Y. July 15, 2015) (noting that, once the court finds that fees are recoverable under a contractual provision, the court must still determine the reasonable amount). For the reasons set forth below, I recommend that HTV be awarded $13,132.25 in attorneys' fees (somewhat less than the amount requested) and $576.77 (the full amount sought) in costs.
1. Reasonableness of Requested Rates
As a general matter, the starting point in analyzing whether claimed attorneys' fees are appropriate is "the lodestar-the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co. , 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (internal quotation marks omitted) ) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany , 522 F.3d 182, 183 (2d Cir. 2008) & Perdue v. Kenny A. ex rel. Winn , 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) ). There is a strong presumption that the lodestar represents the appropriate award, although courts have the discretion *720 to enhance or reduce the lodestar in rare and exceptional circumstances. ( Id. ) The party seeking fees bears the burden of demonstrating that the fees are reasonable, see Hugee v. Kimso Apartments, LLC , 852 F.Supp.2d 281, 298 (E.D.N.Y. 2012) (citing Hensley v. Eckerhart , 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ), and the party's fee application must be supported by contemporaneous time records that "[specify], for each attorney, the date, the hours expended, and the nature of the work done," Marion S. Mishkin Law Office v. Lopalo , 767 F.3d 144, 148 (2d Cir. 2014) (citing New York State Ass'n for Retarded Children, Inc. v. Carey , 711 F.2d 1136, 1148 (2d Cir. 1983) ).
An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson , 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ; see also Rosado v. City of New York , No. 11cv4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case is brought."). Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, see Broome v. Biondi , 17 F.Supp.2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought. Miele v. New York State Teamsters Conf. Pension & Ret. Fund , 831 F.2d 407, 409 (2d Cir. 1987) ; see McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund , 450 F.3d 91, 96-7 (2d Cir. 2006). Paralegal services are includable in an award of attorneys' fees, and the reasonableness of their fees are also determined by reference to the prevailing hourly rate in the relevant community. See Marisol A. ex rel. Forbes v. Giuliani , 111 F.Supp.2d 381, 386 (S.D.N.Y. 2000) (citing Missouri v. Jenkins by Agyei , 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ; U.S. Football League v. Nat'l Football League , 887 F.2d 408, 415-16 (2d Cir. 1989) ). In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill , 522 F.3d at 190.
HTV is represented in this action by attorneys with the law firm of Halperin Battaglia Benzija LLP ("HBB"). In particular, HTV seeks attorneys' fees for work performed by two HBB attorneys, Scott A. Ziluck, Esq. ("Ziluck") and Alan D. Halperin, Esq. ("Halperin"), and one paraprofessional, Kamesha Boston ("Boston"). Nearly all of the work on this action, however, was performed by Ziluck, as Halperin and Boston each recorded less than one hour of time on the matter. (See Ziluck Decl, Ex. E, at 1-3 (reflecting single time entry of .40 hours for Halperin, on 5/9/17; and two time entries, of .30 each, for Boston, on 3/27/17 and 5/17/17).)
Ziluck states that he is of counsel to HBB and is "the firm's primary litigation attorney." (Ziluck Decl. ¶ 26(a).) He was admitted to practice in New York in 1995, and states that he has practiced continuously since then, "primarily in the field of commercial litigation." (Id. ) HTV seeks to recover fees for Ziluck's work on this matter at a rate of $495 per hour (see Proposed Findings ¶ 42(a); see also Ziluck Decl. ¶ 26(a) ), a rate that, as a general matter, this Court finds reasonable for an attorney with 20-plus years of experience, engaging in commercial litigation in this market, see, e.g., Weiwei Gao v. Sidhu , No. 11cv2711 (WHP) (JCF), 2013 WL 2896995, at *6 (S.D.N.Y. May 7, 2013), report and *721 recommendation adopted , 2013 WL 2896995 (June 13, 2013) (finding that $550 per hour was a reasonable rate for a breach-of-contract commercial litigation case where the attorney had primary responsibility for the matter).
Nonetheless, a review of HBB's submitted time records suggest that no associate was assigned to this case, and that Ziluck therefore performed a substantial amount of work that could have been performed by a more junior attorney, or even by a paralegal, billing at a lower rate. For example, Ziluck conducted document review; apparently drafted the Complaint in its entirety; prepared a summons, civil cover sheet, and corporate disclosure statement (as required by Rule 7.1 of the Federal Rules of Civil Procedure ); prepared documents for electronic filing; and filed papers with the Court. (See Ziluck Decl., Ex. E, at 2 (time entry for, e.g. , 5/15/17).) He also prepared a set of documents for service; made arrangements for service of the Complaint and followed up with the process server, and filed proof of service; communicated with the office of the Clerk of Court regarding obtaining a certificate of default; prepared and filed the request for that certificate; and appeared before the Court's judgments clerk regarding the same. (See id. , at 2-3 (time entries for 5/16/17, 5/17/17, 5/26/17, 6/12/17, 6/19/17, 6/30/17, 7/5/17, and 7/7/17).) He also reviewed individual judge rules; drafted all of the papers filed by HTV in support of its request for a default judgment; made arrangements with a process server for service of those papers and filed proof of service; contacted the Court regarding scheduling matters; and drafted all of HTV's papers on this damages inquest. (See id. , at 3-5 (time entries for, e.g. , 7/13/17, 7/15/17, 7/17/17, 7/18/17, 7/24/17, 7/25/17, 8/9/17, 9/8/17, 9/13/17, 9/15/17, 9/20/17, 9/22/17, 9/27/17, and 9/29/2017).)
"Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner." Union Cent. Life Ins. Co. v. Berger , No. 10cv8408 (PGG), 2013 WL 6571079, at *6 (S.D.N.Y. Dec. 13, 2013) (collecting cases). Although it would arguably be appropriate to reduce Ziluck's requested rate to account for his performance of work that could have been performed by a less senior attorney, see, e.g. , Almanzar v. 1342 St. Nicholas Ave. Rest. Corp. , No. 14cv7850 (VEC) (DF), 2016 WL 8650464 (S.D.N.Y. Nov. 7, 2016), report and recommendation adopted , 2017 WL 1194682 (Mar. 30, 2017), this Court does note that Ziluck essentially handled the case on his own, and thus also performed senior-level work. Under these circumstances, and rather than parse through the presented time entries to apply different hourly rates to different work performed by a single attorney, this Court will, as discussed further below, apply an overall percentage reduction to the fees requested for Ziluck's work, in order to account for the issue. See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc. , No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *10 (S.D.N.Y. Dec. 3, 2013) (finding percentage fee reduction warranted where, inter alia , attorney billed at $350 per hour for work such as drafting standard forms of service and reviewing judge's rules), report and recommendation adopted , 2014 WL 1338065 (Apr. 3, 2014) ; Rosso v. Pi Mgmt. Assocs. , No. 02cv1702 (KNF), 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing fees by 15% where, inter alia , "some of the work done by a senior attorney at the law firm could have been performed by a junior attorney").
As for the rates charged by the two other timekeepers who billed time to this matter, Halperin, who, according to Ziluck, is managing partner of HBB, billed *722 for his time on this case at the rate of $575 per hour. (Ziluck Decl. ¶ 26(b).) Halperin was admitted to practice in New York in 1991, and has practiced continuously since his admission. (Id. ; see also Proposed Findings ¶ 42(b).) In light of his level of experience, this Court finds Halperin's requested hourly rate to be reasonable and in accord with rates that have been awarded in this District. Tabatznik v. Turner , No. 14cv8135 (JFK), 2016 WL 1267792, at *12 (S.D.N.Y. Mar. 30, 2016) (approving partner rate of $650 per hour in action to enforce a promissory note). This Court also finds Boston's proposed rate of $95 per hour (see Proposed Findings ¶ 45(c) ) to be reasonable. Boston is described by Ziluck as a "paraprofessional/office assistant" (Ziluck Decl. ¶ 26(c) ), and she reportedly performed "administrative work" on this matter. Her requested rate is below the range of paralegal rates that have recently been approved in this District, see, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd. , No. 12cv5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (approving $140 hourly rate for paralegal); Rosado v. City of N.Y. , No. 11cv4285 (SAS), 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012) (finding hourly rate of $125 to be reasonable for paralegal activities), and should thus be approved.
2. Reasonableness of Stated Hours
In determining whether a reasonable amount of time was expended on a matter, the Court may consider, inter alia , the nature and quality of the work submitted by counsel in connection with the litigation, see Kirsch v. Fleet St. Ltd. , 148 F.3d 149, 173 (2d Cir. 1998) ; In re Agent Orange Prod. Liab. Litig. , 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, see Hensley , 461 U.S. at 436, 103 S.Ct. 1933 (holding that there is "no precise rule or formula" for reducing a fee award and that courts have discretion to either eliminate specific hours or reduce the lodestar to account for limited success). Other factors that a court should consider include "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved." Sidhu , No. 11cv2711 (WHP) (JCF), 2013 WL 2896995, at *5 (citations omitted). Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. See Seitzman v. Sun Life Assurance Co. of Canada , 311 F.3d 477, 487 (2d Cir. 2002) (noting that the time component should not reflect hours that are duplicative or excessive).
In support of its application for fees, HTV has provided purportedly contemporaneous time records detailing the time that Ziluck, Halperin, and Boston spent on each task for which fees are requested. (See Ziluck Decl. ¶ 25 & Ex. E.) In total, HTV seeks fees for 35.6 hours of work by the HBB law firm, with 34.6 of those hours recorded by Ziluck. (See Ziluck Decl., Ex. E.) The fees relate not only to hours expended in the prosecution of this lawsuit, but also to HBB's pre-litigation efforts to obtain satisfaction of the debt by drafting a demand letter to Agarwal. (See id. ) As, under the Guaranty, Agarwal is obligated to reimburse HTV for attorneys' fees and costs incurred in connection with its efforts to collect the amounts owed under both the Promissory Note and the Guaranty (see Harrington Decl., Ex. B, Sections 2 & 15), HTV is entitled to recover legal fees for the collection activity that preceded the commencement of this lawsuit, as well as the fees incurred in the lawsuit's prosecution, see *723 Sidley Holding Corp. v. Ruderman , No. 08cv2513 (WHP) (MHD), 2009 WL 6047187, at *18 (S.D.N.Y. Dec. 30, 2009) (holding that contractual provision for reimbursement of attorneys' fees obligated defendant to pay fees incurred in connection with both federal litigation and related state court action), report and recommendation adopted , 2010 WL 963416 (Mar. 15, 2010) ; Assured Guar. Corp. v. EMC Mortg., LLC , 2013 WL 1442177, at *6 (finding that reimbursement provision gave plaintiff a contractual right to recover fees incurred in the making of initial demands and in later litigation).
This Court finds, however, that the manner in which Ziluck recorded his time in this matter was problematic. As a preliminary matter, this Court notes that Ziluck consistently engaged in block billing, i.e. , clustering various tasks together in a single time entry. (See, e.g. , Ziluck Decl., Ex. E, at 3-4 (time entry for 7/17/17, recording 3.50 hours for work described as follows: "Finalize S. Ziluck affirmation in support of default motion; Review and redact attorney's fees exhibit; Emails from and to P. Johnson regarding signed declaration and revisions and review of interest calculation; Office conference with A. Saulitis regarding issues related to motion; Finalize statement of damages, order to show cause, and proposed default judgment."[9] ).)
While block billing is "not prohibited in this Circuit," as long as the Court can determine, from context, the overall reasonableness of the total hours claimed, Zimmerman v. Portfolio Recovery Assocs. , No. 09cv4602 (PGG), 2013 WL 6508813, at *11 (S.D.N.Y. Dec. 12, 2013) (internal quotation marks and citation omitted), counsel's extensive use of block billing in this case hinders this Court's ability to understand how much time was devoted to particular tasks, so as to determine whether that time was reasonably spent. Even though most of counsel's billing entries in this instance were for relatively short amounts of time (often under an hour), some reduction in the requested fees is still warranted, given the difficulty block billing creates for judicial review. See, e.g., Green v. City of New York , 403 Fed.Appx. 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive block billing in time entries); Bank v. Ho Seo, No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) (reducing a fee award, and noting that the process of combining "multiple tasks into one entry" blocks the Court's "efforts to evaluate the reasonableness of any of the listed activities"), adopted as modified on other grounds, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010).
Compounding the issue of block billing in this particular case, this Court is unable to discern whether the amount of time spent by Ziluck on certain tasks in this action was reasonable because it appears that Ziluck worked simultaneously on both this litigation and the related BFL Action (which, as noted above, is also before *724 this Court for a damages inquest), often performing variations of the same types of tasks for both cases on the same day, and block billing in each. Moreover, although Ziluck has not explained how he apportioned his time in his billing records, this Court's review of those records suggests that he routinely attributed half of his time to one case, and half to the other, even where the work performed for the two cases was not identical. Indeed, Ziluck evenly divided his time entries on 32 out of the 36 days in which he recorded work on both cases, even in instances where there were notable, case-specific divergences in the descriptions of the work performed. (Compare, e.g. , Ziluck Decl., Ex. E, at 2 (time entry for 5/9/17, recording 1.30 hours for: "Office correspondence with A. Halperin regarding response from D. Harrington on action against D. Agarwal; Telephone call with D. Harrington and A. Halperin regarding same; Email from P. Johnson regarding updated interest calculations; Review promissory note, guaranty and other relevant documents; Begin drafting complaint.") with Declaration of Scott A. Ziluck in Support of Damages Inquest, dated Oct. 5, 2017, filed in BFL Action at Dkt. 22 ("Bhungalia Ziluck Decl."), Ex. E, at 2 (time entry for 5/9/17, recording 1.30 hours for: "Emails to and from H. Bhungalia regarding request for status update and preparation of complaint; Review promissory note, guaranty and other relevant documents; Begin drafting complaint.").)[10] For his work on his separate clients' inquest submissions, Ziluck evenly divided 100 percent of his time, for work performed over a three-week period. (See Ziluck Decl., Ex. E, at 5& Bhungalia Ziluck Decl., Ex. E, at 6 (time entries recording equal amounts of time expended in each case on 9/8/17, 9/13/17, 9/15/17, 9/20/17, 9/22/17, 9/27/17, and 9/29/17).)
Ziluck has asserted that, by combining work on this case with the work performed on the BFL Action, "[e]conomies were realized" (Ziluck Decl. ¶ 23), and this may well have been true, but the identical amounts of time recorded in the two actions give rise to questions regarding the reliability of the time entries. First, it is difficult to see how the time Ziluck expended on the two cases would so consistently be the same, regardless of whether the same tasks were being performed. Second, Ziluck's recording of equal amounts of time in both cases appears to have resulted in at least some inflation of hours. For example, on its face, one of Ziluck's time entries in this case seems reasonably to record .30 hours for a short telephone call to this Court's chambers regarding a scheduling order, and a client email regarding the same (see Ziluck Decl., Ex. E, at 4 (time entry for 8/9/17) ), but a virtually identical entry, recording another .30 hours in the BFL Action (Bhungalia Ziluck Decl., Ex. E, at 5 (time entry for 8/9/17) ) makes the time expended seem less reasonable. Adding both together, Ziluck effectively recorded 36 minutes for a telephone call that could not have lasted more than a few minutes and two emails, an amount that appears excessive. This does not suggest billing "efficiencies," but rather improper duplicative billing.
Finally, this Court notes that this case involves a relatively straightforward *725 contract claim-a failure to pay on an unconditional guaranty-and a default by the defendant. In similar cases, in a similar posture, the Court has approved, as reasonable, considerably fewer hours than the 35.6 hours claimed by HBB to have been incurred in this case. See, e.g., Customers Bank v. Anmi, Inc. , No. 11cv7992 (AJN) (DF), 2014 WL 842577, at *10 (S.D.N.Y. Mar. 3, 2014) (adopting report and recommendation) (finding 20.6 hours to be reasonable in action arising from default on promissory note where defendant failed to defend the action); Diamant v. Dynasty Diamond and Jewelry Group Corp. , No. 04cv3844 (GBD) (DF), 2006 WL 728802, at *5 (S.D.N.Y. Mar. 20, 2006) (adopting report and recommendation) (finding 18.91 hours spent on a breach-of-contract case in which a default judgment was entered to be reasonable).
In sum, given (1) Ziluck's performance of a great deal of work that could have been performed by a more junior attorney, at a lower hourly rate, (2) his pervasive block billing of his time, (3) his consistent practice of dividing his time evenly between two related matters, without explanation and with only rare differentiation, and (4) the fact that the overall amount of time billed on this matter seems somewhat higher than warranted, in light of the straightforward nature of the claims raised and the fact that Agarwal never appeared in the case to defend against HTV's claims, I recommend a reduction of 25% in the attorneys' fees requested for the work performed by Ziluck. See Carey , 711 F.2d at 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application); see also, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc. , No. 04cv5316 (RMB) (MHD), 2007 WL 1284013, at *3 (S.D.N.Y. Apr. 24, 2007) (reducing time claimed by one particular attorney by one-third, in part "because the time reports yield little insight into how this attorney's time was divided"); Lane Crawford , No. 12cv919 (GBD) (AJP), 2013 WL 6481354, at *10 (applying 15% reduction where, inter alia , attorney billed for work at a more junior level than rate reflected); Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc. , No. 15cv5981 (LGS) (DF), 2016 WL 8674686 (S.D.N.Y. May 13, 2016) (finding time expended to be excessive in light of default posture of the case, and applying 25% reduction to requested attorneys' fees), report and recommendation adopted , 2016 WL 3566237 (June 27, 2016).
3. Lodestar Calculation
In light of the above, and taking into account this Court's recommended reduction to Ziluck's requested fees for the overly high billing rate he charged for many of the tasks he performed and the deficiencies in his billing records, the lodestar for this action may be calculated as follows:
Timekeeper Position Rate Hours Reduction Total Fees Ziluck Of Counsel $495/hr × 34.60 hrs -25% (as = $12,845.25 discussed above) Halperin Managing Partner $575/hr × .40 hrs = $230 Boston Paraprofessional $95/hr × .60 hrs = $57.00 Total: $13,132.25
This Court finds that there are no extraordinary circumstances here that warrant any adjustment to the lodestar of $13,132.25, and recommends that this *726 amount be awarded as part of the judgment.
4. Reasonable Costs
"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher , 143 F.3d 748, 763 (2d. Cir. 1998) (quoting U.S. Football League , 887 F.2d at 416 ). Here, HTV seeks $576.77 in costs for shipping, court fees, service of process, and litigation support services (including searches for corporate documents, outstanding judgments, and pending litigation) performed through LexisNexis and via the Court's Public Access to Court Electronic Records ("PACER") system. (Ziluck Decl., Ex. G.)
Costs for shipping, filing fees, process servers, and litigation support are recoverable. See Home Loan Inv. Bank, F.S.B. v. Lemans Properties, LLC , No. 11cv1107 (DRH) (AKT), 2012 WL 1020430, at *7 (E.D.N.Y. Mar. 2, 2012) (awarding costs for judgment and lien searches), report and recommendation adopted , 2012 WL 1019597 (Mar. 26, 2012) ; Tips Exports, Inc. v. Music Mahal, Inc. , No. 01cv-5412 (SJF) (VVP), 2007 WL 952036, *11 (E.D.N.Y. Mar. 27, 2007) (reimbursing plaintiff for process servers and postage); Shannon v. Fireman's Fund Ins. Co. , 156 F.Supp.2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and Federal Express costs). Although HTV has not substantiated the amount of these costs by providing invoices or receipts, HBB did document its costs, with specificity, in its billing records, and Ziluck has attested to them. (See Ziluck Decl. ¶ 34, Ex. G; see also Hernandez v. JRPAC Inc. , No. 14cv4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) ) (finding attorney declaration that certain amounts were expended to be sufficient).)
Accordingly, I recommend that the judgment in HTV's favor also include its requested costs of $576.77.
CONCLUSION
For all of the foregoing reasons, I recommend that judgment be awarded in HTV's favor, against Agarwal, in the amount of:
1. $616,275.63 in principal due and owing under the Promissory Note;
2. $43,756.59 in unpaid interest accrued as of September 25, 2016;
3. Additional interest on the loan balance of $660,032.22, for the period from September 26, 2016 to the date of entry of judgment, to be calculated by the Clerk of Court at the rate of $366.68 per day (i.e. , 20 percent per annum, based on the actual number of days elapsed over a year of 360 days);
4. $13,132.25 in attorneys' fees; and
5. $576.77 in costs.
Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, United States Courthouse, 500 Pearl Street, Room 1330, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS
*727 AND WILL PRECULDE APPELLATE REVIEW. See Thomas v. Arn , 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; IUE AFL-CIO Pension Fund v. Herrmann , 9 F.3d 1049, 1054 (2d Cir. 1993) ; Frank v. Johnson , 968 F.2d 298, 300 (2d Cir. 1992) ; Wesolek v. Canadair Ltd. , 838 F.2d 55, 58 (2d Cir. 1988) ; McCarthy v. Manson , 714 F.2d 234, 237-38 (2d Cir. 1983).

Also before this Court for a damage inquest is a related case, Bhungalia Family, LLC, v. Agarwal , No. 17cv03568 (JGK) (DF) (the "BFL Action"), involving a virtually identical claim brought against Agarwal by a different plaintiff. This Court is issuing a separate Report and Recommendation in that case, although with substantially the same reasoning.

The facts set forth herein are taken from Plaintiff's inquest submissions. (See Proposed Findings of Fact and Conclusions of Law, dated Oct. 5, 2017 ("Proposed Findings") (Dkt. 18); Declaration of Daniel Harrington in Support of Damages Inquest, dated Oct. 4, 2017 ("Harrington Decl.") & exhibits thereto (Dkt. 20), as supplemented by the Supplemental Declaration of Daniel Harrington in Support of Damages Inquest, dated May 8, 2018 ("Harrington Supp. Decl.") (Dkt. 23); Declaration of Scott A. Ziluck in Support of Damages Inquest, dated Oct. 5, 2017 ("Ziluck Decl.") & exhibits thereto (Dkt. 20).) Plaintiff's well-pleaded factual allegations are deemed to be true in light of Defendant's default. See, e.g. , Finkel v. Romanowicz , 577 F.3d 79, 84 (2d Cir. 2009).

The Promissory Note recites that it was "issued as part of a series of similar promissory notes" (Harrington Decl., Ex. A, at 1), which presumably included the promissory note that is separately at issue in the BFL Action (see supra , at n.1).

The Promissory Note does not provide a specific date by which the first monthly installment of interest was required to be paid, instead leaving the date blank, as follows: "Acrued [sic] interest shall be paid monthly, beginning on September * * *, 2015." (Harrington Decl., Ex. A, Section 1(a).)

This Court notes that, although paragraph 9 of HTV's Proposed Findings seems to suggest that Choxi began making payments under the Promissory Note as early as October 7, 2015, the reference to that date appears to be a typographical error, as both the Complaint and Harrington, in his Declaration, indicate that the period during which Choxi made payments commenced on October 14, 2015. (See Compl. ¶ 13; Harrington Decl. ¶ 11.)

In paragraph 20 of the Harrington Declaration, and by reference to the spreadsheet attached as Exhibit E thereto, Harrington essentially explains that, for each of the payments made by Choxi prior to its default, HTV applied the stated interest rate of 12% per annum to the then-outstanding principal, and divided that amount by 360 (which was stated in the Promissory Note to be the number of days per year to be used for the purpose of calculating interest); this enabled HTV to derive the amount of interest due per day, based on the existing principal amount. HTV then multiplied that amount by the number of days since Choxi's last prior payment, to determine the amount of Choxi's payment that should be attributed to accrued interest, and applied the remainder to reduce the outstanding principal.

This extension of time was prepared with spaces for two signatures-for HTV and for the plaintiff in the BFL Action. (See Harrington Decl., Ex. C.) The plaintiff in the BFL Action separately executed the extension. (See Dkt. 21-3, in 17cv3568 (JGK) (DF).)

This date may have been a typographical error, as the demand letter further indicates, as set out above, that HTV was demanding payment of the then-outstanding balance, plus interest accrued from March 25 (not March 21), 2017. Regardless, the seeming discrepancy does not affect this Court's inquest calculations.

Although certain portions of this time record and other time records quoted herein were redacted by HTV when filed on the Court's public docket, HTV has provided a courtesy copy to this Court in unredacted form, and this Court perceives no basis for confidentiality. To the extent HTV may contend that the redacted portions constitute privileged communications, this Court notes that none of the redacted content includes the actual substance of either any client request for legal advice or of any advice given by counsel, but rather merely includes the general subject matter of attorney-client communications. As such, the redacted information is not privileged. See, e.g., Broadrock Gas Services, LLC v. AIG Specialty Ins. Co. , No. 14cv3927 (AJN) (MHD), 2015 WL 916464, at *2 (S.D.N.Y. March 2, 2015) (general subject matter is not privileged).

For another example where Ziluck listed case-specific work, but still recorded identical time, compare Ziluck Decl., Ex. E, at 3 (time entry for 7/15/17, recording .60 hours for: "Prepare D. Harrington declaration; Prepare updated HTV interest calculation; Email to D. Harrington regarding same.") with Bhungalia Ziluck Decl., Ex. E, at 3 (time entry for 7/15/17, recording .60 hours for: "Revise default motion papers; Email to H. Bhungalia regarding same.")